In the Matter of the ESTATE OF
Lorine E. TODD, Deceased.

Allan A. TODD and Marlan
L. Todd, Appellees,

v.

Lenis L. TODD and Randy R. Todd, Executors of the Estate of Lorine E. Todd; Bonnie L. Todd and Sherrie J. Todd,

No. 97–77.

Supreme Court of Iowa.

Oct. 21, 1998.

David L. Charles and Margaret C. Callahan of Belin Lamson McCormick Zumbach Flynn, P.C., Des Moines, and George W. Wittgraf of Sayre & Wittgraf, Cherokee, for appellants.

Daniel D. Dykstra and Edward C. Poulsen of Heidman, Redmond, Fredregill, Patterson, Plaza & Dykstra, L.L.P., Sioux City, for appellees.

Considered by HARRIS, P.J., and LARSON, CARTER, NEUMAN, and TERNUS, JJ.

NEUMAN, Justice.

This appeal concerns inter vivos and testamentary transfers of real and personal property from the decedent, Lorine Todd, to her youngest sons (and executors of her estate), Lenis and Randy Todd. Lorine's oldest sons, Allan and Marlan Todd, filed suit in probate to contest the will and inter vivos transfers. They claimed the transactions were the product of undue influence and fraud by their younger siblings who allegedly stood in a confidential relationship with Lorine.

The case was tried to a jury. The two camps gave markedly different explanations for Lorine's partiality toward Lenis and Randy. Lenis and Randy's case portrayed devoted sons who for years tended to the needs of their elderly mother as her physical health declined. After their father's death, they managed the family farm and assisted their mother in conducting her business and banking. They and their spouses furnished meals on a daily basis, as well as supporting Lorine during her many hospitalizations. They characterized their older brothers as being estranged from the family, absent from holiday and birthday celebrations, and neglecting to visit their mother when hospitalized.

By stark contrast, Allan and Marlan accused the two younger brothers of dominating an ailing, elderly woman in order to take control of her accounts and the family farm. They offered the testimony of public health workers who feared Lorine was vulnerable and could be easily manipulated. They claimed their younger brothers deliberately concealed their mother's hospitalizations from them. Upon her death, they contend, Lenis went so far as to tell the funeral director Lorine had only two sons. To support their claim of manipulation and intimidation, they recounted incidents ranging from Lenis directing his mother's bids in bridge to his frightening the grandchildren during a Christmas dinner argument when he swore and threw food and chairs. They testified that Lenis once threatened his father with a gun and, on several occasions, nearly drove him to suicide. They claimed Randy once lost his temper and "bashed in [their father's] brand new pickup" with a sledgehammer.

At the close of evidence, the court directed a verdict for Lenis and Randy on the fraud allegations.[1] It submitted the remaining

---

1. In *In re Estate of Hollis*, 234 Iowa 761, 770, 12 N.W.2d 576, 581 (1944), we noted the distinction frequently drawn between fraud and undue influence as grounds for setting aside a will: "In general, fraud deceives the testator's mind; undue influence overpowers it—usually by a course of conduct." We then defined fraud as

willfully false statements of fact by a beneficiary to a testator, which are made in bad faith or with intent to deceive testator, which do deceive him and induce him to make a will he would not otherwise have made.

*Hollis*, 234 Iowa at 770, 12 N.W.2d at 581; *see generally* Sheldon F. Kurtz, *Kurtz on Iowa Es-*

claims of undue influence—regarding both Lorine's will and her predeath transfers—to the jury. Over Lenis and Randy's objection, the court instructed the jury that the contestants carried the burden of proving their claims of undue influence by a preponderance of the evidence. As the following discussion will reveal, this was a correct statement of the law in so far as the will contest was concerned. But it misstated both the burden of proof, and nature of proof, required to sustain a challenge to the inter vivos transfers.

The jury returned verdicts for Allan and Marlan on both of their causes of action. Thus the court set aside Lorine's will, as well as thirteen inter vivos transfers. We now affirm that portion of the court's judgment pertaining to the will, but reverse and remand for a new trial concerning the inter vivos transfers.

■ **I.** By statute, an action to set aside a will is triable in probate as a law action. Iowa Code § 633.33 (1995); *In re Estate of Bayer,* 574 N.W.2d 667, 671 (Iowa 1998); *In re Estate of Dankbar,* 430 N.W.2d 124, 126 (Iowa 1988); *In re Estate of Herm,* 284 N.W.2d 191, 200 (Iowa 1979); *see also* Iowa Code § 633.311 (jury demand permitted in action to contest will). Our review on appeal from a will contest is on assigned error, not de novo. *Dankbar,* 430 N.W.2d at 126; *Herm,* 284 N.W.2d at 200.

■ By contrast, "all other matters triable in probate shall be tried by the probate court as a proceeding in equity." Iowa Code § 633.33; *see Herm,* 284 N.W.2d at 199. Thus our review of the factual record pertaining to the inter vivos transfers would ordinarily be de novo. *Herm,* 284 N.W.2d at 199; *In re Estate of Baessler,* 561 N.W.2d 88, 91 (Iowa App.1997). Here, however, neither the contestants' petitions nor their jury demand distinguished between the will contest—triable at law—and their challenge to Lorine's inter vivos transfers—triable in equity. Nor did defendants, Lenis and Randy, object to trying both causes of action at law.

We are therefore obliged to review the case for errors at law, any objection to error in the forum having been waived. *Knight v. Anderson,* 292 N.W.2d 411, 412 (Iowa 1980); *see* Iowa Code § 611.12 (error as to nature of proceedings waived by failure to move for correction).

**II.** Settling the forum and scope of review does not necessarily settle questions bearing on burden of proof or the quantum or nature of the proof. As the following commentary reveals, however, they are not entirely unrelated:

> While civil litigants are required to prove their cases by a preponderance of the evidence, it has been held by some courts that the higher requirement of proof by clear and convincing evidence has been deemed to apply to certain cases that are equitable in nature, such as suits involving fraud, misrepresentation, and undue influence. Some courts have held, however, that a lower standard is required for wills and a higher one for contracts, and that in a will contest, undue influence need only be established by a preponderance of the evidence, while the setting aside of a contract for undue influence requires clear and convincing evidence.
>
> To rebut a presumption of undue influence, some jurisdictions require clear and convincing evidence, some require only a preponderance, and some may even require the highest standard of proof—proof beyond a reasonable doubt.

25 Am.Jur.2d *Duress and Undue Influence* § 42, at 555–56 (1996). It appears that in most jurisdictions, the burden of proof rests upon the contestants to prove undue influence in the execution of a will by the preponderance of the evidence. *See, e.g., In re Estate of Price,* 223 Neb. 12, 388 N.W.2d 72, 77 (1986) (will contest, triable at law, requires proof by a preponderance of evidence; action to set aside conveyance of real estate, triable in equity, requires proof by clear, satisfactory and convincing evidence); *Looney v. Estate of Wade,* 310 Ark. 708, 839 S.W.2d 531, 533 (1992) (will contestant must

---

*tates* § 4.46, at 200–01 (3d ed.1995). The court's dismissal of the fraud count is not at issue in this

appeal.

ordinarily prove testator's mental incapacity by preponderance of evidence; only where beneficiary drafts or procures will is higher burden of proof applied); *In re Estate of Gaspelin*, 542 So.2d 1023, 1025 (Fla.Dist.Ct. App.1989) (standard of proof in will contest is preponderance of evidence); *In re Estate of Raedel*, 152 Vt. 478, 568 A.2d 331, 335 (1989) (in absence of fraud, burden on will contestants to prove undue influence by preponderance of evidence). Wisconsin, on the other hand, requires that undue influence—whether alleged in connection with a will contest or inter vivos conveyance—be proved by clear, satisfactory and convincing evidence. *In re Estate of Perssion*, 20 Wis.2d 537, 123 N.W.2d 465, 466 (1963).

■ The parties claim no Iowa case has directly addressed the quantum of proof necessary to prevail in a will contest. Yet our decisions have historically followed what appears to be the majority rule. In *In re Will of Behrend*, 233 Iowa 812, 817, 10 N.W.2d 651, 655 (1943), we approved a jury instruction advising that "the burden is upon the contestant to prove [undue influence] by a preponderance of the evidence." Similarly, in *Baessler*, 561 N.W.2d at 93, our court of appeals affirmed the contestant's failure to prove "by a preponderance of the evidence" that the testator was unduly influenced in the execution of his will. These decisions are in keeping with the longstanding Iowa rule that "in law cases questions of fact are to be determined from the preponderance of the evidence." *Jamison v. Jamison*, 113 Iowa 720, 723, 84 N.W. 705, 706 (1900) (rejecting clear, satisfactory, and convincing standard in law action against estate to enforce promises under will).[2]

We have spoken more plainly in the realm of challenges to inter vivos transfers. A party alleging a grantor's insufficiency of mental capacity to execute a deed carries the burden of proving by clear, convincing, and satisfactory evidence that the grantor failed to "possess 'sufficient consciousness or mentality ... to understand the import of her acts' when the deed was executed." *Daughton v. Parson*, 423 N.W.2d 894, 896 (Iowa App.1988) (quoting *Costello v. Costello*, 186 N.W.2d 651, 654 (Iowa 1971)). Two rationales are offered for requiring a higher standard of proof: The transaction of ordinary business and the making of contracts calls for a "higher degree of mental competence" than required for testamentary disposition of property, *see id.*, and the higher standard "give[s] deference to the presumption of fair dealing." *Lockard v. Carson*, 287 N.W.2d 871, 874 (Iowa 1980).

Where, as here, the contestants tender proof of a confidential relationship [3] whereby the one gaining the advantage in a transaction profits at the expense of the other, the burden shifts to the recipient "to establish by clear and convincing proof that the advantage was procured without undue influence." *Herm*, 284 N.W.2d at 200; *see Baessler*, 561 N.W.2d at 91–92. "The rule is particularly applicable where one of the parties has a dominating influence over the other by reason of the affection, trust, and confidence of the latter in the former." *Herm*, 284 N.W.2d at 200. We recently commented on this burden shifting and the necessity of challenging inter vivos transfers by clear and convincing proof, contrasting this standard with that applied to allegations of undue influence in connection with a will. *See Bayer*, 574 N.W.2d at 675.

---

**2.** In one seemingly aberrant Iowa case, citing Pennsylvania authority, this court observed that only "clear and convincing" proof of undue influence would upset the will of "a prosperous business man, with a strong and vigorous mind, not easily changed or influenced ...." *In re Estate of Townsend*, 128 Iowa 621, 624, 105 N.W. 110, 110–11 (1905). *Townsend*'s holding appears to address the strength of the evidence tendered, not the standard of proof generally required in will contests. To the extent the standard employed in *Townsend* departs from settled law, we now disavow it.

**3.** A "confidential relationship" is broadly defined as

> any relation existing between parties to a transaction wherein one of the parties is duty bound to act with the utmost good faith for the benefit of the other party .... [T]he phrase embraces those multiform positions in life wherein one comes to rely on and trust another in his [or her] important affairs.

*Herm*, 284 N.W.2d at 199.

■■ To summarize, contestants seeking to set aside a will based on undue influence carry the burden of proving the essential elements of the action by a preponderance of the evidence.[4] Persons seeking to set aside inter vivos transfers carry a higher burden of proving their cause of action by clear, satisfactory and convincing evidence. Where a confidential relationship is found to exist, and inter vivos conveyances are challenged, the burden of proof shifts to the benefitted parties to prove—by clear, satisfactory, and convincing evidence—their freedom from undue influence.[5] No such presumption of undue influence exists in the case of a will contest, even where the testator and beneficiary stand in a confidential relationship. *Bayer*, 574 N.W.2d at 675. But a suspicion of overreaching may arise where the dominant party has participated in the actual preparation or execution of the will. *Id.*

**III.** As already noted, Allan and Marlan contested Lorine's inter vivos as well as testamentary distributions favoring Lenis and Randy. Yet the district court combined both causes of action for trial, submitting them for consideration by the jury under one quantum of proof—preponderance of evidence.[6] Lenis and Randy objected, insisting—both during the jury instruction colloquy and again in their motion for new trial—that proof sufficient to set aside the inter vivos transfers must be clear, satisfactory, and convincing.[7]

Based on the authority discussed in division II of this opinion, appellants' assertion was partially correct. The court properly instructed the jury concerning the proof necessary to sustain the contestants' challenge to the will; it failed to correctly instruct the jury concerning the qualitative nature of proof necessary to sustain the challenge to Lorine's inter vivos transfers. The importance of the distinction was highlighted by this court in *Lockard v. Carson*, a fraud case. There we said " 'clear and satisfactory' refers to the Character or nature of the evidence, whereas 'preponderance' of the evidence is a Quantitative measure." *Lockard*, 287 N.W.2d at 874. The district court overlooked that distinction here.

■■ **IV.** It is axiomatic that jury instructions, when viewed as a whole, must convey the applicable law. *Benn v. Thomas*, 512 N.W.2d 537, 539 (Iowa 1994). A trial court is without discretion to deny a motion for new trial when the jury instructions contain a material misstatement of the law. *Id.*

■■ We are persuaded that the court's error in instructing the jury was material. The facts surrounding Lorine's disposition of her property were hotly contested at trial. Importantly, her inter vivos transfers—amounting to nearly $800,000—formed the bulk of her assets. We cannot say with confidence that the court's instructional error did not affect the jury's verdict.

*Baessler*, 561 N.W.2d at 92.

---

4. The elements necessary to sustain a finding of undue influence in the execution of a will are: (1) the testator's susceptibility to undue influence; (2) opportunity to exercise such influence and effect the wrongful purpose; (3) disposition to influence unduly for the purpose of procuring an improper favor; and (4) a result clearly the effect of undue influence.
*Dankbar*, 430 N.W.2d at 128; *see Herm*, 284 N.W.2d at 200–01.

5. Four elements must be proven to rebut a presumption of unde influence being exerted by a person in a confidential relationship with the grantor.... [T]he grantee must prove (1) the grantor's lack of susceptibility to undue influence; (2) the want of opportunity to exercise such influence and effect the wrongful purpose; (3) the lack of a disposition to influence unduly for the purpose of procuring and improper favor; and (4) a result clearly unaffected by undue influence.

6. Using uniform instruction 100.3, the court instructed the jury as follows:

**Burden Of Proof, Preponderance Of Evidence.** Whenever a party must prove something they must do so by the preponderance of the evidence.

Preponderance of the evidence is evidence that is more convincing than opposing evidence. Preponderance of the evidence does not depend upon the number of witnesses testifying on one side or the other.
I Iowa Civ. Jury Instructions 100.3 (1986).

7. Uniform instruction 100.19, requested by Lenis and Randy, states:

**Clear Convincing And Satisfactory Evidence.** Evidence is clear, convincing and satisfactory if there is no serious or substantial uncertainty about the conclusion to be drawn from it.
I Iowa Civ. Jury Instructions 100.19 (1988).

Because the case was tried at law, we are in no position to weigh the evidence as if the case were on de novo review or find, as appellants suggest, that the record "clearly" does not support the contestants' claims. The appellants are, however, entitled to have the case submitted under the proper standard of proof. We therefore affirm the judgment setting aside Lorine's will, but we reverse and remand for a new trial concerning her inter vivos transfers. Our disposition makes it unnecessary, or premature, to address other issues raised by the appellants, including the matter of attorney fees. *See generally Swartzendruber v. Lamb*, 582 N.W.2d 171, 176–77 (Iowa 1998) (discussing standard for recovery of litigation expense by executor and beneficiary charged with undue influence).

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**